LAUGHLIN v. MICHIGAN MOTOR FREIGHT LINES.

1. AUTOMOBILES—MASTER AND SERVANT—RESPONDEAT SUPERIOR—EVIDENCE.

Finding of jury that relation of employer and employee existed between defendant common carrier and owner and operator of truck involved in accident with plaintiff, so as to render it liable for trucker's negligence under rule of *respondeat superior, held,* supported by evidence.

2. APPEAL AND ERROR — AUTOMOBILES — INSURANCE — MASTER AND SERVANT.

Record in personal injury case arising out of collision in Ohio *held,* insufficient to sustain claim of prejudical error by examination as to whether defendant trucker carried cargo insurance, where possibility of error in such particular was cured by limiting the testimony to question as to whether defendant common carrier and owner and operator of truck were employer and employee or relation of independent contractor existed, court remarked that there was no evidence driver was insured for any negligence and no ruling was insisted upon although there were two motions for mistrial.

3. EVIDENCE—FAILURE TO PRODUCE—PRESUMPTIONS.

Failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party.

4. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—DEFINITION.

An independent contractor is one who, carrying on independent business, contracts to do a piece of work according to his own methods, and without being subject to control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

5. AUTOMOBILES—INSTRUCTIONS—COMMON CARRIERS—DELEGATION OF DUTIES.

In action for damages for personal injuries sustained in accident in Ohio between plaintiffs and trucker for defendant common

carrier for hire instruction that common carrier could not delegate its duties and was liable for negligence of persons performing its duties *held*, correct.

6. SAME—JOINT ADVENTURES—EVIDENCE.

In action arising out of accident in Ohio, wherein wife of driver of automobile sued common carrier for injuries sustained in collision with latter's truck, husband and wife *held*, not engaged in joint adventure in operation of automobile under record showing she neither shared the expense nor control of the car in returning to Pennsylvania with daughter from visit with relatives in Michigan.

7. CONFLICT OF LAWS—RIGHT OF ACTION.

The *lex loci delicto* controls matters relating to the right of action.

8. AUTOMOBILES—IMPUTED NEGLIGENCE—OHIO.

In action brought in this State to recover damages for personal injuries sustained in Ohio by wife of driver of car which collided with common carrier's truck, testimony showing that plaintiff herself exercised due care *held*, sufficient to permit recovery where husband was denied relief by jury since doctrine of imputed negligence does not prevail in Ohio.

9. EVIDENCE—JUDICIAL NOTICE—STATUTES AND COMMON LAW OF ANOTHER STATE.

Judicial notice of the statutes and common law of another State may be taken by the courts of this State (3 Comp. Laws 1929, §§ 14179, 14181).

10. APPEAL AND ERROR — QUESTIONS REVIEWABLE — STATEMENT OF QUESTIONS INVOLVED.

Claimed error in admission of certain X-ray pictures in automobile accident case is not considered on appeal where not included in statement of questions involved.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 8, 1936. (Docket No. 27, Calendar No. 38,789.) Decided September 2, 1936.

Case by Hannah J. Laughlin against Michigan Motor Freight Lines, a Michigan corporation, and Edward A. Franklin for personal injuries sustained

in motor vehicle collision in Ohio.  Directed verdict for defendant Franklin.  From verdict and judgment for plaintiff against defendant corporation, it appeals.  Affirmed.

*Dohany & Dohany* (*George A. Porter,* of counsel), for plaintiff.

*Freedman & Drexelius* (*Harold Helper,* of counsel), for defendant corporation.

BUSHNELL, J.  Edward A. Franklin and Vincent Sarah are joint owners of a Chevrolet tractor truck and semitrailer, which they were operating under written contract with defendant Michigan Motor Freight Lines hauling freight between Detroit, Michigan, and Akron, Ohio.  Plaintiff, Hannah J. Laughlin, George W. Laughlin, her husband, and their daughter Hannah, a trained nurse, all of Homestead, Pennsylvania, were returning to their home from a visit with friends in Highland Park, Michigan, when Mr. Laughlin's car either struck or was struck by the trailer of Franklin and Sarah.  The accident occurred about 10:30 a. m. on August 3, 1933, some 25 miles east of Toledo, Ohio, near Elmore, on highway US-102.  The 18-foot concrete pavement, at this point, runs east and west with a dark line in its center.  The day was rainy and foggy.  The truck and trailer were going west at about 20 miles per hour and Mr. Laughlin was driving east at about the same speed.  Miss Laughlin was seated at the right of her father and Mrs. Laughlin was at the right side of the rear seat.  Mr. Laughlin testified he saw the truck coming out of the fog about 60 or 70 feet distant with its left wheels 2½ to 3 feet over the center line of the road; he pulled to his right, bringing his right front wheel off the pave-

ment when he was struck at his left center door post by some part of the trailer bed. He said he had applied his brakes and was thereafter traveling not over 15 miles per hour and from 2½ to 3 feet south of the center line. The impact threw his car on its side in a ditch, severely injuring Mrs. Laughlin.

Mrs. Laughlin said the truck came up the wrong side of the road and their car was struck by the corner of the trailer. Miss Laughlin testified that "the truck kept coming towards us all the time," and that no part of her father's car was over the center line, but on the contrary was over the right shoulder of the road as far as they could go.

Vincent Sarah, who was driving the truck at the time, testified that he saw the Laughlin car 400 to 500 feet away "over on our side of the road. We always ride off the shoulder of the road—our left wheels were two or three feet from the center line of the highway—at least two or three feet. I kept edging over until the front of my tractor was on the edge of the pavement. He kept veering towards us. He didn't hit the truck. He collided with about the second post on the trailer. I heard the tinkle of glass or a lantern bounce on the road; knocked the lantern off the trailer. Franklin said, 'Did you hear a noise?' I said, 'Yes.' So we had to stop."

Franklin was called by the plaintiff for cross-examination under subpœna *duces tecum*. He claimed to have misplaced his written contract with defendant. He was examined at length as to its details, much of which are similar to those stated in *Hazard* v. *Great Central Transport Corp.*, 270 Mich. 60. He testified that defendant told him what to do, where to go, etc., collected the revenue and paid him 65 per cent. thereof "with deductions for pick-ups, for deliveries and insurance, P.U.C.'s (meaning Public

Utility Commission charges) and a few other things. * * * The Michigan Motor Freight Lines gave me rules to observe in hauling freight for it. It gives a book of rules. I am required to observe those rules in my hauling. If I didn't observe them, they would dismiss me from their service." This and other testimony indicates a relationship between Franklin and defendant similar to that shown in the *Hazard Case, supra.*

Franklin's testimony regarding the collision was much like Sarah's. He further said:

"I learned that I was in an accident only after an automobile passed by and then we heard this glass shattered."

After finding a place to pull the tractor and trailer off the highway, the men went back, found their lantern lying in the center of the road; the Laughlin car in the ditch, undamaged except for a scratch on its left side and marks on the door handle. Marks were also found by them on the second post of the left side of Franklin's trailer.

The disputed facts were submitted to a jury who found for plaintiff, Hannah J. Laughlin, against the defendant company in the sum of $1,500 plus costs and, by direction of the court, nothing as against Franklin, the declaration not alleging a cause of action as against him. Mr. Laughlin's action, submitted on the same record, resulted in a verdict of no cause for action.

In an attempt to secure the details of the missing written contract, plaintiff questioned Franklin regarding insurance on the cargo carried by defendant at the expense of the operator. Defendant objected to an answer and moved for a mistrial. The court took the answer, stating:

"I understand you offer this evidence only as applying to whether or not it is an independent contract or whether he was employed by the defendant company."

Defendant then objected to the materiality of the testimony and that the contract was the best evidence and this objection was sustained. The motion for mistrial was renewed, but no ruling was given on the motion.

The colloquy which followed does not indicate an insistence by counsel for a ruling, but rather that the court was asked to instruct the jury to disregard the matter, which was done.

Defendant cites *Kerr* v. *National Fulton Brass Manfg. Co.,* 155 Mich. 191, and asserts error, but it did not make a sufficient record on this question and any possibility of error in this particular was cured by limiting the testimony to a purpose which could not have prejudiced the defendant. *Runnells* v. *Village of Pentwater,* 109 Mich. 512. The evidence was limited to cargo insurance and the court said:

"There is no indication that the driver was insured * * * for any negligence he might have."

Appellant claims insufficient proof of defendant's liability for the acts of Franklin and Sarah. Franklin, who was represented by appellant's counsel, was directed by subpoena to produce his written contract with defendant. He neither produced the original nor attempted to secure a copy.

"Failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party." *Brandt* v. *C. F. Smith & Co.,* 242 Mich. 217.

An independent contractor is defined in *Marchand
v. Russell,* 257 Mich. 96, quoting from *Zoltowski* v.
*Ternes Coal & Lumber Co.,* 214 Mich. 231, 233. See,
also, *Hanisko* v. *Fitzpatrick Bros.,* 232 Mich. 593,
595, and cases cited.

The jury here as in *Cooper* v. *Interstate Motor
Freight Co.,* 264 Mich. 131, and *Hazard* v. *Great Cen-
tral Transport Corp., supra,* determined that the
proofs established the liability of the defendant.

Our observation in the *Cooper Case* is applicable.
After discussing the relationship, we said (p. 135):

"While these facts may be consistent with the re-
lationship of an independent contractor, they are
more apt to suggest an employer-employee arrange-
ment between defendant and Cesiel's sons. The con-
tract provided that Cesiel was to haul in accordance
with the company's method of handling freight,
which undoubtedly tends to indicate defendant's
right of control. The provisions that any violation
of the rules of defendant would operate to void the
contract is still further corroboration."

Defendant admitted in its answer that it is a com-
mon carrier for hire, but says it was error for the
court to charge the jury in the language of the
*Hazard Case, supra,* because of *Leonard* v. *Krieder,*
128 Ohio St. 267 (190 N. E. 634), which, it says, in-
terprets Ohio General Code, § 614–84.

The *Leonard Case* states, in effect, that neither the
rule of law as to independent contractors nor that
of ordinary agents, as they relate to motor trans-
portation companies, have been abrogated by Ohio
General Code, § 614–99.

An examination of this authority does not show
any conflict with the construction of the law of Ohio
in *Motor Freight, Inc.,* v. *Public Utilities Commis-
sion of Ohio,* 125 Ohio St. 349 (181 N. E. 479) and

*Interstate Motor Freight Corp.* v. *Beecher,* 37 Ohio App. 23 (174 N. E. 27), and therefore *Hazard* v. *Great Central Transport Corp., supra,* is controlling.

Since defendant admits that it is a common carrier, it may not escape liability under the claim that Franklin was an independent contractor and the court correctly charged the jury that under the law of Ohio "the duties of a common carrier are non-delegable and it is answerable for the negligence of persons to whom it intrusts the performance of part of its duties."

Plaintiff and her husband were not engaged in a joint enterprise according to this record. The earmarks of the legal relation of a joint adventure in the operation of a motor vehicle may be found in *Farthing* v. *Hepinstall,* 243 Mich. 380, and *Frisorger* v. *Shepse,* 251 Mich. 121. Mrs. Laughlin neither shared the expense nor the control of the car. See, Huddy on Automobiles (6th Ed.), § 682; Berry on Automobiles (3d Ed.), § 514; 2 R. C. L. p. 1208; 8 L. R. A. (N. S.) 628; 32 Michigan Law Review, p. 274, and cases annotated in 48 A. L. R. 1077, 63 A. L. R. 921, and 80 A. L. R. 312. See, also, *Bailey* v. *Parker,* 34 Ohio App. 207 (170 N. E. 607).

Under the rule of *lex loci delicto,* the laws of Ohio control. *Eskovitz* v. *Berger, ante,* 536. In Ohio the doctrine of imputed negligence does not prevail. *Toledo Railways & Light Co.* v. *Mayers,* 93 Ohio St. 304 (112 N. E. 1014), and Mrs. Laughlin was only required to exercise reasonable and ordinary care to avoid injury. *Rogers* v. *French Brothers-Bauer Co.,* 31 Ohio App. 77 (166 N. E. 427); 18 A. L. R. 309; 47 A. L. R. 293, and 63 A. L. R. 1432.

We need not detail testimony which shows the exercise of such care on the part of plaintiff.

The court did not err in taking judicial notice of the statutes and common law of the State of Ohio.

This is provided for by 3 Comp. Laws 1929, §§ 14179, 14181. *Walton School of Commerce* v. *Stroud,* 248 Mich. 85.

Appellant claimed error in the admission of certain X-ray pictures and cites a case not in point. The alleged error is not included in the statement of questions involved and will not be considered. *Sebastian* v. *Sherwood,* 270 Mich. 339.

The judgment is affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.