SLAYTON *v.* BOESCH.

1. CONFLICT OF LAWS—TORTS COMMITTED IN ANOTHER STATE—GOV-
   ERNING LAW.

   Where an action for damages arises out of a tort occurring in
   another State and is brought in this State, matters relating
   to the right of action are governed by the law of the State
   in which the tort occurred, while matters relating purely to
   the remedy are governed by the law of this State.

2. EVIDENCE—JUDICIAL NOTICE—STATUTES, COMMON LAW, AND BOOKS
   OF REPORTS OF CASES OF OTHER STATES.

   Courts of this State may take judicial notice of statutes, com-
   mon law, and the books of reports of cases adjudged by the
   courts of another State which purport to be published under
   the authority of that State (3 Comp. Laws 1929, §§ 14179,
   14181).

3. AUTOMOBILES—GROSS NEGLIGENCE—NEBRASKA GUEST PASSENGER
   ACT—CONSTRUCTION OF STATUTES.

   Under the law of Nebraska, the term "gross negligence," as
   used in automobile guest passenger act, means great, exces-
   sive, or a high degree of, negligence, and indicates the absence
   of even slight care (3 Neb. Rev. Stat. 1943, § 39–740).

4. SAME—GROSS NEGLIGENCE—NEBRASKA—QUESTION OF FACT—EVI-
   DENCE.

   Under the law of Nebraska, what amounts to "gross negli-
   gence," as the term is used in automobile guest passenger

---

* Continued from Vol. 314.

The existence of a cause of action for a tort committed in another
state depends upon the law of that state, see Restatement, Conflicts
of Law, 378, 379.

. act, must depend upon the facts and circumstances in any given case, is ordinarily one of fact and when submitted as such to the jury upon conflicting evidence, the truth of the evidence tending to support the finding of the jury will be assumed (3 Neb. Rev. Stat. 1943, § 39–740).

5. Same—Nebraska—Gross Negligence—Question for Jury—Verdict—Evidence.

In action against driver by plaintiff guest passenger for injuries she sustained when rapidly-driven car overturned during rainstorm at curve on crowned blacktop pavement in Nebraska as defendant took right hand off steering wheel to reach for peanuts which had been passed to him, submission to jury of question as to whether he was guilty of gross negligence was not contrary to the law of Nebraska and its verdict for him was not contrary to the great weight of the evidence (3 Neb. Rev. Stat. 1943, §§ 39–723, 39–740).

6. Negligence—Violation of Statute—Nebraska.

While violation of statute regarding use and operation of automobiles upon the public highway is not negligence *per se* in Nebraska, it is evidence of negligence which may be taken into consideration with all other facts and circumstances in determining whether or not negligence is established thereby (3 Neb. Rev. Stat. 1943, §§ 39–723, 39–7,108).

7. Automobiles—Gross Negligence—Nebraska—Instructions.

Claim that court in effect directed a verdict for defendant driver of car in action by plaintiff, a guest passenger when accident occurred, *held*, without merit where instructions specifically left matter of whether the composite effect of speed, operation of car, and other matters constituted gross negligence under law of Nebraska where accident occurred (3 Neb. Rev. Stat. 1943, §§ 39–723, 39–740).

8. Appeal and Error—Sudden Emergency—Instruction—Harmless Error.

The inclusion of an instruction to jury of the law of sudden emergency, which was clear and complete as to the law of Nebraska where the accident occurred, but which only remotely bore upon issues in the case and might well have been omitted, *held*, not to constitute reversible error.

9. Automobiles—Assumed Risk—Speed—Instruction.

Where there was testimony that plaintiff and her husband and defendant driver had intended to go to distant city by nightfall, that plaintiff was examining a travel book to see where

they might stay and the mileage had been figured out to reach such city before night if possible, court's charge that, if jury found an agreement had been reached to stay at such place, plaintiff assumed the risk attendant upon the speed necessary to accomplish such purpose was justified by the testimony and under the law of Nebraska where automobile accident occurred.

10. SAME—INSTRUCTIONS—UNAVOIDABLE ACCIDENT—CONTRIBUTORY NEGLIGENCE—COMPARATIVE NEGLIGENCE—ASSUMED RISK.

Lengthy instruction in case arising from automobile accident in Nebraska involving Michigan residents *held*, not argumentative but to have carefully covered applicable law of Nebraska and correctly stated its law on subjects of unavoidable accident, contributory and comparative negligence, and assumed risk, each of which subjects had some possible bearing on the issues.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 3, 1946. (Docket No. 14, Calendar No. 43,193.) Decided June 3, 1946.

Case by Pearle C. Slayton against Herman W. Boesch for personal injuries sustained while a guest passenger in automobile defendant was driving in Nebraska. Verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Mustard, McAuliffe, Hatch & Clagett* (*Allen & North,* of counsel), for plaintiff.

*Alexander, McCaslin, Cholette & Buchanan,* for defendant.

BOYLES, J. This is an action at law for personal injury damages resulting from an automobile accident which occurred September 29, 1941, in the State of Nebraska. On trial by jury a verdict was returned that the defendant was not guilty of gross negligence as the plaintiff in her declaration al-

leged. Judgment for defendant was entered on the verdict, from which plaintiff appeals.

The major ground on which plaintiff relies for reversal is that the verdict is against the great weight of the evidence. This requires a consideration of the facts. These parties are residents of Battle Creek, Michigan. Plaintiff's husband, Philip E. Slayton, and the defendant had arranged for a trip by automobile to California on business. They were to use Mr. Slayton's automobile and share expenses. Mrs. Slayton, the plaintiff, went along as a guest passenger on a vacation pleasure trip. The three started out from Battle Creek on the morning of September 28, 1941, and on that day drove to Omaha, Nebraska, about 600 miles, each sharing in the driving. On the following morning they left Omaha before 9 o'clock, Mr. Slayton first doing the driving. It started to rain and the pavement became wet. Mr. Slayton drove very rapidly for about 200 miles and the defendant then took over the driving. The accident in question occurred after the defendant had driven 10 or 12 miles. The road was composed of slippery blacktop, wet, and it was raining quite hard. At the scene of the accident the paved portion of the road was about 18 feet wide, with level shoulders about 15 feet wide on both sides of the road which were composed of sticky clay. The blacktop was crowning, higher in the center. Plaintiff was sitting beside the defendant driver in the front seat, her husband was in the rear seat, both of them examining some travel books. Neither of them complained to the defendant that he was driving too fast. Mr. Slayton testified that the defendant appeared to be driving all right, although he testified that immediately prior to the accident the speedometer indicated a speed of 75 to 80 miles per hour. There was further testimony that the defendant asked for some peanuts

and put them in his mouth, and that immediately thereafter the automobile skidded, the left front skidded off the road onto the clay shoulder, back onto the pavement, the automobile rolled over one or more times and landed on its right side. At the place of the accident the road was at a slight upgrade with a slight curve to the left.

Plaintiff testified that shortly after they left Omaha while her husband was driving it rained continuously, that she repeatedly complained to her husband of his speed and that the automobile skidded while he was driving. She also said that she was reading a tourist guidebook in the front seat while defendant was driving and did not notice his speed. She also testified that she did not recall that the defendant asked her to pass him the peanuts, that she had no cause for complaint about defendant's driving, and that she had not paid any attention to it.

The defendant himself testified that the accident occurred after he had driven 12 or 14 miles, that it was raining hard, that plaintiff had previously asked her husband to slow down while he was driving. Defendant testified he had noticed the car skidding while Mr. Slayton was driving although he had not looked at the speedometer and did not recall the speed. He testified the road was narrow and crowning in the center, that he concluded to stay off the right side of the pavement where it sloped, in order to avoid the car skidding into the clay shoulder. There was no other traffic. The windshield wipers kept the windshield clean. Prior to the accident some peanuts were passed to him but he did not recall whether he looked to the side when he reached for the peanuts. He took his right hand off the steering wheel to put the peanuts into his mouth, then returned it to the wheel. He then felt the car swerve, took his foot off the accelerator, did

not recall whether he put his foot on the brake, the car went into the mud, he tried to bring it under control, and the next thing he knew the car was upset. He did not know what caused the car to skid or what his speed was, no one had warned him about his driving, and he testified that he had no trouble controlling the car until it skidded. In substance, his testimony was that he was driving in a straight line in the center of the road, suddenly the car started to skid, swung to the left, went off the road, and in trying to get it back on the road, the car rolled over.

The grounds on which plaintiff relies to establish gross negligence are that the defendant was driving at an excessive rate of speed under the conditions disclosed, took his right hand off the wheel to eat peanuts, failed to keep the automobile under control so as to avoid skidding and running off the pavement. Plaintiff also relies on the maximum speed claimed to be allowable under the Nebraska statute, 60 miles per hour.

Where an action for damages arises out of an automobile accident occurring in another State and is brought in this State, matters relating to the right of action are governed by the State in which the accident occurred, while matters relating purely to the remedy are governed by the laws of this State. *Edison* v. *Keene,* 262 Mich. 611; *Eskovitz* v. *Berger,* 276 Mich. 536; *Kaiser* v. *North,* 292 Mich. 49; *Summar* v. *Besser Manfg. Co.,* 310 Mich. 347.

Inasmuch as the statutes and the decisions of the courts of Nebraska govern the right of action of plaintiff, counsel for appellant in their brief discuss the two questions, namely, the great weight of the evidence and the laws of Nebraska, as a mixed question of law and fact and argue both together. We adopt the same practice.

Courts of this State may take judicial notice of statutes, common law, and the books of reports of cases adjudged by the courts of another State which purport to be published under the authority of that State. 3 Comp. Laws 1929, §§ 14179, 14181 (Stat. Ann. §§ 27.874, 27.876); *Laughlin* v. *Michigan Motor Freight Lines,* 276 Mich. 545.

It is conceded that plaintiff at the time of the accident was a guest passenger in the car owned by her husband and driven by the defendant. Nebraska has a guest passenger statute which in defining liability is quite similar to the guest passenger statute of this State.* That part of the Nebraska statute (3 Neb. Rev. Stat. 1943, § 39-740) pertinent to the instant case is as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in such motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of such motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle."

The guest passenger statutes of both States define the liability for an accident as one caused by the "gross negligence" of the owner or operator of the vehicle. The Michigan statute adds to gross negligence "or wilful and wanton misconduct." Decision in the instant case depends on the construction given to the term "gross negligence" by the Supreme Court of Nebraska.

The guest passenger act was put into the statute law of Nebraska in 1931.† The first case decided by the Nebraska Supreme Court construing this

* 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446).
† Nebraska Laws 1931, chap. 105, § 1, p. 278 (Neb. Comp. Stat. Supp. 1941, § 39-1129).

act was *Morris* v. *Erskine,* 124 Neb. 754 (248 N. W. 96). In that case the court said (p. 755):

"We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine. Where a question of fact has been submitted to a jury upon conflicting evidence, this court, ordinarily, will assume the truth of the evidence tending to sustain the finding of the jury."

An examination of upwards of 30 reported opinions of the Nebraska Supreme Court in which the Nebraska guest passenger act was construed plainly establishes that the construction of the act adopted in *Morris* v. *Erskine, supra,* has been consistently followed. It also is plain that the Nebraska court has in general either held that the question whether the defendant was guilty of gross negligence was an issue of fact for the jury, or that the facts were not sufficient to establish gross negligence as defined by the court. The language used in some of the Nebraska guest passenger cases is as follows:

"The defendant was driving fast between Elkhorn and the railroad crossing, and on several occasions plaintiff told the defendant to slow down. He did slow down some for the railroad tracks and then speeded up again to from 50 to 55 miles an hour. Plaintiff then complained to defendant about his speed, and soon thereafter called his attention to the turn sign which is approximately 195 feet north of the center of the curve. Defendant, however, continued at that speed and made the turn at 55 miles an hour or faster, driving his car to the left of the highway and completely off the pavement into the dirt part of the road on the left of the curve, barely missing a telephone pole south of the pavement on the southwest end of the curve. He continued on the south side of the road toward the west at the same speed or faster. At the same time a Lincoln sedan, driven by B. F. White, was approaching the curve from the west on the south side of the highway at a speed of 25 miles an hour. A head-on collision seemed unavoidable, and the Lincoln sedan turned northeast to get on the north side of the pavement. Defendant also turned north to get on the north side of the pavement, his right side of the street, and at a point 50 or 60 feet west of the corner, that is, west of the pole, the two cars came together in a V-shaped position a little north of the center of the pavement. .* * *

" ' "Gross negligence" is a wanton or reckless disregard of the safety of others; it signifies the driving of an automobile carelessly or heedlessly in a reckless disregard of the rights of others or of the consequences, *but need not necessarily be wilful.'* * * *

"The evidence adduced by plaintiff was such that it required submission to a jury for determination." *Swengil* v. *Martin,* 125 Neb. 745 (252 N. W. 207), 746–748, 750.

" 'What amounts to gross negligence in any given case must depend upon the facts and circumstances.

What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence.' *Morris* v. *Erskine,* 124 Neb. 754 (248 N. W. 96).

"This interpretation was adopted in later cases. *Gilbert* v. *Bryant,* 125 Neb. 731 (251 N. W. 823); *Swengil* v. *Martin,* 125 Neb. 745 (252 N. W. 207). In the present case it appears quite conclusively that the operator of the car at and near the point of accident was driving approximately 50 miles an hour; that Sixteenth street is one of the busy streets of Omaha, and was at the time considerably clogged with traffic. On the issue as to gross negligence each case must stand upon its own particular facts and circumstances. A rate of speed which would amount to gross negligence in one case might, amid different surroundings and dissimilar circumstances, fall far short thereof. This question is ordinarily a question of fact to be determined by the jury, if from the whole record there appears to be sufficient evidence to justify the submission of the question to them." *Sheehy* v. *Abboud,* 126 Neb. 554, 557, 558 (253 N. W. 683).

"Whether the driver of an automobile is guilty of gross negligence, who, after warning of a dangerous place in the road, continues to drive, at night, down a long, steep hill on a curving road at the rate of 50 miles an hour, with the automobile weaving from side to side, and who fails to decrease the speed, and runs off a bridge at the foot of the hill and injures a guest, presents a question for the jury." *Sterns* v. *Hellerich* (syllabus), 130 Neb. 251 (264 N. W. 677).

"As the defendant was driving south between Yates and Grace streets he turned his head to the left and pointed out a tree which had blown down upon a porch. He forgot about the stop sign at Grace street. The police car stopped at the stop sign, and when defendant looked ahead again it was

necessary for him to apply his brakes suddenly to avoid a collision. The brakes took hold with such force that the car stopped very quickly, throwing plaintiff into the windshield of defendant's car and throwing Mrs. Black onto the floor in the back of the car. Plaintiff was seriously injured.  *  *  *

"Resolving every doubt, both as to facts and in the rulings upon the evidence, in favor of the plaintiff, we are of the opinion that plaintiff has not proved a case of gross negligence." *Black* v. *Neill,* 134 Neb. 764, 767, 769 (279 N. W. 471).

"We will now briefly summarize the evidence of the defendant, Mrs. Ruby Gardner, who was driving the car in the case at bar. She testified that she came up Fortieth street at 25 or 30 miles an hour, and she made the turn in the center of the intersection, on the north side of Everett street; that she was then going about 20 miles an hour; that she had slowed down to make the turn, not by putting on the brake, but by lifting her foot off the gas, but not entirely off, still giving a little gas. She said the car went over the parking and landed up against a tree; that she had lost control of it. Two witnesses testify that she did not slow down.  *  *  *

"In our opinion, the facts do not warrant a finding of gross negligence under the guest law of Nebraska." *Munsell* v. *Gardner,* 136 Neb. 214, 220, 221 (285 N. W. 555).

"In action against automobile host by guest for injuries sustained when automobile left highway and turned over, guest's evidence that host was driving 70 to 75 miles an hour around slight curve, and suddenly applied brakes, causing automobile to leave highway, was not sufficient to show 'gross negligence' on part of host within meaning of automobile guest statute. Comp. Stat. Supp. 1931, § 39–1129." *Gummere* v. *Mudd,* 139 Neb. 370 (headnote, 297 N. W. 622). (Directed verdict for defendant affirmed.)

"Are the facts sufficient to sustain a' finding that the appellant was guilty of gross negligence? The record discloses, if believed by the jury, that the appellant had been driving her car at a high rate of speed during the entire trip and that shortly before the accident she was going approximately 80 miles an hour which speed she continued to maintain until the accident happened. That she was traveling in the nighttime over a road with which she was not familiar. That she had been drinking intoxicating liquors during the entire trip. That she became confused when she arrived at the Y in the highway and took the wrong road. That she then attempted to cut across the island in the Y to get back to the highway and ran into a ditch and upset. We have held in many cases that the question of the existence of gross negligence must be determined from the facts and circumstances in each case. We therefore conclude that under the facts as disclosed by the record the question of whether the defendant was in this case guilty of gross negligence is for the jury." *Landrum* v. *Roddy*, 143 Neb. 934, 939, 940 (12 N. W. [2d] 82, 149 A. L. R. 1041).

"Under evidence of host's excessive speed on unfamiliar gravel road, inattention, and loss of control of automobile, whether host was guilty of gross negligence warranting recovery under guest statute for guest's death was for jury. Neb. Comp. Stat. Supp. 1941, § 39–1129." *Komma* v. *Kreifels*, 144 Neb. 745 (headnote, 14 N. W. [2d] 591).

"In an action for gross negligence under the automobile guest statute (Neb. Comp. Stat. Supp. 1941, § 39–1129), where there is adequate proof of negligence, a verdict should be directed for defendant only where the court can clearly say that it fails to approach the level of negligence in a very high degree under the circumstances. In all other cases, it must be left to the jury to determine whether it amounts to gross negligence or to mere

ordinary negligence.'' *Komma* v. *Kreifels* (syllabus), 144 Neb. 745 (14 N. W. [2d] 591).

Under the testimony adduced in the case at bar, and the decisions of the Supreme Court of Nebraska, plaintiff has no ground to complain of the course taken by the trial court in the instant case in submitting to the jury the question as to whether the defendant was guilty of gross negligence. The verdict for the defendant was not contrary to the law of Nebraska and it is not contrary to the great weight of the evidence.

Complaint is made by appellant of the court's instruction, in charging that violation of any speed statute ''does not *of itself* constitute gross negligence.'' This was a proper charge, under the Nebraska law. Appellant claims that the court charged the jury that ''*speed does not* constitute gross negligence.'' The court did not so charge. The court instructed the jury that ''such negligence (violation of a statute) *of itself* does not constitute gross negligence.'' The charge was a correct statement of the Nebraska law. Any doubt that might remain as to the correctness of this charge was dispelled when the court charged the jury that ''speed * * * is only one factor to be considered in conjunction with all others and the composite of all acts on the part of defendant are to be considered in the light of all then existing conditions, such as weather, condition of the highway, familiarity with the road, the ability and competence of the driver, and all other existing and surrounding circumstances and conditions, and any and all other acts of negligence, in passing upon the question of gross negligence. And one who drives at a speed in violation of all reasonable rules of prudence and safety applicable to the surroundings may be guilty of gross negligence.''

Plaintiff refers to the Nebraska statutes limiting the legal rate of speed of automobiles to 60 miles per hour outside of cities and villages and claims that violation was negligence *per se.* 3 Neb. Rev. Stat. 1943, § 39–723, provides:

"No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person, nor in any case at a rate of speed exceeding 60 miles per hour between the hours of sunrise and sunset."

3 Neb. Rev. Stat. 1943, § 39–7,108, provides:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful: (1) 20 miles per hour in any business district, (2) 25 miles per hour in any residence district, and (3) 60 miles per hour between the hours of sunrise and sunset and 50 miles per hour between the hours of sunset and sunrise upon any highway outside of a city or village."

Under Nebraska decisions, a violation of the statutes regulating the use and operation of motor vehicles upon the highways is not negligence *per se.* It was not error for the court to so instruct the jury in the instant case.

"While instruction No. 6 is poorly phrased, however, within the rule announced in *LaFleur* v. *Poesch,* 126 Neb. 263 (252 N. W. 902), it did properly submit to the jury the question of the effect of the violations, if any, of any statutes regulating the use and operation of motor vehicles upon the public highways. The rule as announced in *LaFleur* v.

*Poesch, supra,* is as follows: 'A violation of statutes regulating the use and operation of motor vehicles upon the highways is not negligence *per se,* but evidence of negligence which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby. *Stevens* v. *Luther,* 105· Neb. 184 (180 N. W. 87); *Dorrance* v. *Railway Co.,* 105 Neb. 196 (180 N. W. 90); *Thomas* v. *Rasmussen,* 106 Neb. 442 (184 N. W. 104); *Taylor* v. *Koukal,* 107 Neb. 409 (186 N. W. 339); *Burkamp* v. *Roberts Sanitary Dairy,* 117 Neb. 60 (219 N. W. 805).' " *Landrum* v. *Roddy, supra,* 941, 942.

Appellant contends that the trial court erred in the following particular in charging the jury; for example, in several instances the court charged the jury as follows:

"*If* you find that the automobile was driven in such a manner, * * * " again—"*If* you find from the evidence that the defendant was driving at a high rate of speed and recklessly, * * * " and· again—"*If* you find from the testimony that the plaintiff was reading, * * * " then the jury should, or had a right to, consider that fact in determining whether or not the defendant was guilty of gross negligence. Appellant contends that the instructions of that nature· were the equivalent of a directed verdict for the defendant. We do not so construe the charge. The court left it for the jury to determine, first, whether such were the facts, and if the jury should so find, then the jury should or had the right to consider those facts in determining whether the defendant was guilty of gross negligence. In that connection, the court repeatedly instructed the jury that it was entitled to consider whether the composite effect of all such acts of negligence constituted gross negligence. There is no merit in appellant's claim that the court in

effect instructed the jury to return a verdict for the defendant.

The court instructed the jury as to the law of sudden emergency "which is not brought about by any act of his (the defendant's) negligence." While this had only a remote bearing on the issues of the case and might well have been omitted without error, its inclusion in a charge which is clear and complete as to the Nebraska law of the case does not require reversal. As given, the charge as to the law of sudden emergency was correct, under the Nebraska law.

Complaint is also made of the charge on the question of assumed risk. The court said:

"*If* you find from the evidence that *an agreement* had been reached by plaintiff and her husband and defendant, that on the second day their destination was Denver, Colorado, before dark, then the plaintiff assumed the risk attendant upon the speed necessary to accomplish that purpose."

While this instruction follows the Nebraska decisions, appellant claims this was reversible error because there was no evidence of any such *agreement*. There was testimony that the three intended to go to Denver that night, that Mrs. Slayton was looking in a travel book where they might stay in Denver that night, that the mileage had been figured out to reach Denver before night if possible. The court charged the jury:

"*If* you find    *    *    *    that an agreement had been reached."

It would seem that this was more favorable to plaintiff, than otherwise, on the law of assumed risk. The charge as to assumed risk was justified by the facts and under the Nebraska law.

The court instructed the jury as to the Nebraska law of unavoidable accident, contributory and com-

parative negligence, and assumed risk. The charge in these respects was a correct statement of the Nebraska law, and appellant's objection is that the court should not have charged the jury on these elements of the law. The inclusion of these instructions does not require reversal. Each had some possible bearing on the issues. We have carefully examined this charge in its entirety, covering 20 pages of the printed record. The charge was not argumentative and it carefully and fully covered the law of Nebraska applicable to the case. The record does not indicate whether any requests to charge were made by plaintiff, or that any suggestions were made by counsel when the charge had been concluded. We find no reversible error in the charge to the jury on the grounds asserted by appellant.

Judgment affirmed, with costs.

BUTZEL, C. J., and CARR, SHARPE, REID, and STARR, JJ., concurred. NORTH, J., did not sit. BUSHNELL, J., took no part in the decision of this case.